UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BRIDGES NETWORK, INC.,                                          06-CV-0031E(F)

        Plaintiff,

  -vs-                                                          MEMORANDUM

HARAS RAFIQ,                                                           and
IBRAR UL-HAQ and
BRIDGES TV UK,                                                     ORDER[1]

        Defendant.

---

      Plaintiff Bridges Network, Inc. ("Plaintiff") commenced this action on January 17, 2006 by filing a Verified Complaint as well as an *ex parte* motion for a temporary restraining order and/or preliminary injunction and for an order permitting service by alternate means pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure ("FRCvP"). In its Verified Complaint, Plaintiff alleges that Defendants Haras Rafiq ("Haras"), Ibrar Ul-Haq ("Ibrar") and Bridges TV UK have infringed Plaintiff's trademark for Bridges TV, have violated the Anticybersquatting Consumer Protection Act, have breached a Memorandum of Understanding ("MOU") as well as non-disclosure agreements and their fiduciary duties and, finally, have engaged in unfair competition against Plaintiff.

---

[1]This decision may be cited in whole or in any part.

Plaintiff's motion is supported by the January 17, 2006 affirmation of Jeremy A. Colby, Esq., the January 16, 2006 affirmation of Muzzammil "Mo" S. Hassan (Plaintiff's Chief Executive Officer), a Memorandum of Law and a Witness and Exhibit List as required by Local Rule of Civil Procedure 65(b)(4). In short, Plaintiff alleges that Defendants have usurped Plaintiff's name, logo and trademark in "Bridges TV," as well as Plaintiff's confidential and proprietary business and financial information, its reputation and worldwide goodwill, and have breached various contractual and fiduciary duties when they hold themselves out as "Bridges TV UK" without authorization from Plaintiff.

## FACTS

Plaintiff, through Hassan's affirmation and its Verified Complaint, alleges that it is a television network dedicated to Muslim lifestyle programming which was developed to foster "bridges of understanding" between Muslims and non-Muslims. Hassan Aff. ¶4. Plaintiff began using the name Bridges TV in early 2002 through its website and has filed an application for registration of that trademark with the Patent and Trademark Office. In 2004, Defendants Haras and Ibrar approached Plaintiff seeking support for their idea to launch a similar network in the United Kingdom ("UK"). Haras and Ibrar traveled to New York and entered into a MOU with Plaintiff on July 26, 2004 whereby they agreed to jointly undertake the development of "Bridges TV UK."

Plaintiff alleges that, in exchange for options in Bridges Network and a percentage of the income of Bridges TV UK, Haras and Ibrar agreed to become the President and Vice-President, respectively, of Bridges TV UK, and provide leadership, management, and direction for Bridges TV UK. Haras and Ibrar also agreed (1) not to disclose any confidential or proprietary information regarding Plaintiff, or its business, financial, technical or engineering plans; (2) not to work for "any party in competition with [Plaintiff] for a period of two years should the parties cease to work together $_{***}$"; *see* MOU ¶9, and (3) that any information provided by Haras and Ibrar to Plaintiff and any work created by them for Plaintiff "shall be the property of [Plaintiff]." *See* MOU ¶10. Haras and Ibrar also signed Non-Disclosure Agreements.

Plaintiff alleges, *inter alia*, that unbeknownst to it, Defendants obtained trademark registration in the UK for "Bridges TV UK" in March 2005, that such registration was subsequently assigned by Defendants to "Shaneela Sattar" in August 2005 in violation of the MOU, that Defendants attempted to terminate the MOU in September 2005, and that, since that time, Defendants have continued to hold themselves out as Bridges TV UK, have worked toward a launch of Bridges TV UK using Plaintiff's proprietary information and trademarked name and logo, have hired staff and have registered for participation in an upcoming conference of the National Association of Television Program Executives ("NATPE") in Las

Vegas, Nevada, under the name Bridges TV UK. Plaintiff seeks to enjoin Defendants from using Plaintiff's trademarked name and logo, from using Plaintiff's proprietary information and from competing with Plaintiff, particularly by participating in the NATPE conference.

## DISCUSSION

In order to obtain an temporary restraining order, Plaintiff must demonstrate that the order is necessary to prevent irreparable harm and that it is likely to succeed on the merits of its claims or that there are sufficiently serious questions going to the merits of the claims to make them a fair ground for litigation, with a balance of hardships tipping decidedly in Plaintiff's favor. *See Phillip* v. *Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997). In order to obtain such relief *ex parte*,

> "(1) it must clearly appear from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury *** will result to the [Plaintiff] before the adverse party *** can be heard in opposition and (2) the [Plaintiff's] attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required."

FRCvP 65(b).

A. Good Cause for Excusing Notice

Plaintiff has demonstrated sufficient cause to make this motion *ex parte*. Plaintiff asserts that Defendants have indicated previously that they do not

consider the MOU to be enforceable, and, even if enforceable, Defendants would circumvent its terms by operating Bridges TV UK under the names of their spouses, family and/or friends. Compl. ¶ 53. This concern is substantiated in part by the documentary evidence indicating that some property allegedly belonging to Plaintiff — specifically the UK registration of the Bridges TV UK trademark — has been transferred from Ibrar to one "Shaneela Sattar" or "Ibrar, Shaneela," allegedly one of Ibrar's relatives and perhaps his wife.[2]

Plaintiff has also submitted information indicating that Defendants have registered Bridges TV UK for attendance at the NATPE conference which is scheduled to be held on January 24-26, 2006. Plaintiff asserts that Bridges Network also intends to participate at that conference, that the purpose of that conference is for television program producers to market their programs to various networks, that Plaintiff intends to obtain the majority of its programming at the conference and that there is strong likelihood that producers will be confused as to the sponsorship of the respective Bridges entities. Plaintiff has demonstrated that it may suffer immediate irreparable harm by Defendants' participation in the conference before Defendants can be noticed and heard in response to this motion such that the Court concludes that such *ex parte* motion is appropriate.

---

[2] In the Verified Complaint, Plaintiff also alleges that in April 2005 Defendants, while working on Plaintiff's behalf, registered the domain name "bridgestv.tv" which has also been assigned to "Ibrar, Shaneela." Compl. ¶¶74- 76.

B. <u>Irreparable Harm and Likelihood of Success on the Merits</u>

"In an action for trademark infringement, where a mark merits protection, a showing that a significant number of consumers are likely to be confused about the source of the goods identified by the allegedly infringing mark is generally sufficient to demonstrate both irreparable injury and a likelihood of success on the merits." *Virgin Enters. Ltd.* v. *Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). The Court first asks whether Plaintiff's mark is entitled to protection and then whether Defendants' use of the mark is likely to cause confusion to consumers as to the origin or sponsorship of the Defendants' goods. *See Gruner + Jahr USA Publ'g* v. *Meredith Corp.*, 991 F.2d 1072, 1074-76 (2d Cir. 1993). Furthermore, a showing of confusion as to the source of a product ordinarily establishes a risk of irreparable harm to the reputation of the trademark. *See Gen. Motors Corp.* v. *Gibson Chem. & Oil Corp.*, 786 F.2d 105, 109 (2d Cir. 1986).

From the materials submitted, it appears that Plaintiff's mark is entitled to protection. According to Hassan, Plaintiff began using the Bridges TV name and logo with respect to a television network in 2002. Even though Plaintiff's application for trademark registration is pending, such registration is not required in order state a claim for infringement of a trademark. *See* 15 U.S.C. §1125(a). Haras and Ibrar clearly knew of Plaintiff's endeavor into the Muslim television market as they approached Plaintiff seeking advice. Haras was present at the

ceremony to celebrate Plaintiff's initial broadcast in November 2004. Thus, the affirmations and documentary evidence establish Plaintiff's prior use and ownership of the Bridges TV mark.

Next, the Court examines whether Defendants' use of the Bridges TV UK mark is likely to cause confusion. Likelihood of confusion is assessed under the familiar *Polaroid* factors.[3] Even a cursory examination of the facts alleged in this case supports a finding that the likelihood of confusion is great. Plaintiff's mark is strong. "Bridges" is not descriptive of the services Plaintiff supplies. Rather, it is descriptive of Plaintiff's *purpose* in creating its network; it is arbitrary when applied to the services at issue. *See Virgin*, 335 F.3d at 147. Next, the two marks are nearly identical. Defendants' mark merely adds the letters "UK." The third and fourth factors weigh in Plaintiff's favor because Plaintiff and Defendants are using the marks for the same goods and services. Next, there is evidence of actual confusion. Plaintiff has submitted documentary evidence indicating that it has been contacted by individuals seeking employment with Bridges TV UK. Plaintiff also alleges that it has been contacted by creditors of Bridges TV UK seeking payment for their debts because the creditors erroneously believed that

---

[3] The factors are: (1) strength of the plaintiff's mark; (2) similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will bridge the gap between the products; (5) actual confusion; (6) defendant's intent in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group. *Nabisco, Inc.* v. *Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000) (*citing Polaroid Corp.* v. *Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).

Plaintiff was responsible for the debts. Compl. ¶87. There is also a strong inference that Defendants' intent in adopting the Bridges TV UK mark was improper. The seventh factor cannot be weighed as Defendants are scheduled to begin broadcasting sometime this summer. The final factor also weighs in Plaintiff's favor as relatively sophisticated individuals — those seeking employment in the media marketplace — are already confused as to who sponsors Bridge TV UK and it seems virtually certain that less sophisticated consumers of television would be similarly confused.

The Court concludes that Plaintiff has demonstrated that the restraining order is necessary to prevent irreparable harm and that there is a likelihood of success on the merits of its claims.

Accordingly, it is hereby **ORDERED** that Plaintiff's motion is granted and Defendants, their agents or anyone acting at the direction of or in concert with Defendants or their agents are hereby restrained from:

> (A) using Plaintiff's name, logo or "Bridges TV" trademark or other related information;
>
> (B) participating in or attending the National Association of Television Program Executives conference scheduled for January 24-26, 2006 in Las Vegas, Nevada;
>
> (C) competing with Plainitff in violation of the MOU;

(D) using or disclosing Plaintiff's confidential or proprietary information; and

(E) holding themselves out as "Bridges TV" or otherwise communicating to any person or organization that Defendants are affiliated with Plaintiff in any way; and it is further

**ORDERED** that this Order will be binding upon anyone who receives actual notice of this Order; and it is further

**ORDERED** that this Order will expire ten days after entry unless further extended by Order of this Court or by Defendants' consent that it may be extended for a longer period of time; and it is further

**ORDERED** that this Order together with copies of the papers upon which it was granted shall be served upon Defendants forthwith as set forth below; and it is further

**ORDERED** that Bridges shall serve Defendants by (1) attempting personal service in the United Kingdom, (2) certified mail as permitted by Section 10(a) of the Hague Convention and (3) e-mail pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure at h_rafiq@hotmail.com, ibrar@hotmail.com, haras.rafiq@btopenworld.com and ibrar@ntlworld.com; and it is further

**ORDERED** that pursuant to FRCvP 65(c) the Court concludes that this Order shall be effective upon Plaintiff's posting of security or bond in the amount of $10,000; and it is further

**ORDERED** that this temporary restraining order is entered this 19th day of January, 2006 at a.m., in 11:22 a.m. Buffalo, New York; and it is further

**ORDERED** that Plaintiff's motion for an expedited hearing is granted and that a conference to set a date for a hearing is scheduled for January 26, 2006 at 11:00 a.m.

DATED:   Buffalo, N.Y.

January 19, 2006

                                               /s/ *John T. Elfvin*
                                               JOHN T. ELFVIN
                                               S.U.S.D.J.